Sara Anne and Wayne WILLIAMS on
behalf of their minor son, John
WILLIAMS, Plaintiffs,

v.

The SCHOOL DISTRICT OF
BETHLEHEM, PA.,
Defendant.

Civ. A. No. 90–6448.

United States District Court,
E.D. Pennsylvania.

July 14, 1992.

Christina Rainville, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for plaintiffs.

Andrew E. Faust, Curtin and Heefner, Doylestown, Pa., Michael I. Levin, Cleckner and Fearen, Willow Grove, Pa., Stuart L. Knade, Cleckner and Fearen, Harrisburg, Pa., for defendant.

## MEMORANDUM

TROUTMAN, Senior District Judge.

Plaintiff John Williams is a male student at Liberty High School in the Bethlehem School District. In August, 1990, at age 14, John Williams and another male student tried out for the school's field hockey team, which participates in an interscholastic schedule of games. Williams was selected for the junior varsity squad as a goalie and began practicing with the team. He was issued equipment and a team uniform. At the end of August, however, the school district notified the coach that boys are not permitted to play on the girls' field hockey team and ordered that Williams neither practice with the team nor participate in the games.

The instant action by Sarah and Wayne Williams to restore their son to the Liberty High School field hockey team was com-

menced on October 5, 1990, accompanied by a Motion for Preliminary Injunction. Subsequently, on October 15, 1990, plaintiff filed a Motion for Temporary Restraining Order. That motion was joined with the preliminary injunction motion and heard on October 16, 1990. The preliminary injunction/temporary restraining order was denied on the record upon the Court's conclusion that plaintiffs had failed to prove irreparable harm, a necessary element of the emergency equitable relief sought in the motions. (Hearing Transcript, Doc. # 8, at 51).

Thereafter, the case proceeded through discovery and the parties were able to reach a partial compromise for the 1991 field hockey season whereby John Williams was permitted to practice with the team but not permitted to play in the interscholastic games. Presently before the court is plaintiffs' motion for summary judgment, which should dispose of the case in time for the 1992 scholastic field hockey season.

Plaintiffs assert that the defendant's exclusion of John Williams from the girls' field hockey team, which effectively bars him from playing that sport since there is no school field hockey team for boys, violates Title IX of the Education Amendments of 1972, (20 U.S.C. § 1681, *et seq.*), and its implementing regulations, the Pennsylvania Constitution, specifically the Equal Rights Amendment thereof, and both the Equal Protection and Due Process clauses of the Fourteenth Amendment to the United States Constitution.

It is undisputed that the defendant school district limits player participation on the field hockey team to female students [1] and that John Williams was dismissed from his position on the Liberty High School junior varsity field hockey team only because of that school district policy. Thus, it is undisputed that John Williams has been prevented from playing interscholastic field hockey solely on the basis of his gender. The ultimate issue before the

Court, therefore, is whether the school district's action was proper in light of the laws applicable to gender classifications in scholastic athletic programs. We will begin our consideration of this issue with plaintiffs' federal statutory claims, and will address defendant's arguments that disputed issues of material fact preclude summary judgment as such arguments become relevant to the legal issues.

## I. Title IX of The Education Amendments of 1972

■ Pursuant to 20 U.S.C. § 1681(a), popularly known and hereafter referred to as Title IX, students are protected from gender discrimination in educational programs and activities which receive federal financial assistance. Plaintiffs here contend that the Bethlehem School District athletic programs are subject to the Title IX prohibition against discrimination on the basis of sex and that the defendant's announced policy of preventing males from player participation on the field hockey team, which is designated as a girls' sports team, violates that statute.

Defendant first argued that Title IX is inapplicable in that its athletic programs do not receive federal financial assistance, but now concedes that the Civil Rights Restoration Act of 1987, 20 U.S.C. § 1687, specifies that Title IX is fully operative when any part of an educational program or any local or state educational entity receives federal financial assistance. Defendant, therefore, further concedes that its argument concerning the applicability of Title IX has been vitiated insofar as that argument was based upon the absence of federal money for its athletic programs. (*See,* Addendum to Brief of Defendant in Opposition to Plaintiff's Summary Judgment Motion, Doc. # 26 at 2). Defendant continues to argue, however, that its policy of prohibiting boys from playing on the field hockey team does not violate Title IX in that field hockey is a contact sport and athletic opportunities for boys have not previously

---

**1.** It appears that male students can be non-playing managers of the field hockey team, can perform such functions as time-keepers and score-keepers, and that John Williams has con-

tinued to participate in the field hockey program in these capacities since his exclusion as a player. (*See,* Complaint, Doc. # 1, ¶¶ 21, 27).

been limited in the Bethlehem School District. (*Id.*).

These arguments arise from the defendant's interpretation of the portion of Title IX's implementing regulations which address athletic programs, found at 34 CFR § 106.41. In subparagraph (a) thereof, the rule states the general proposition that,

No person shall, on the basis of sex, be excluded from participation in, be denied the benefits of, be treated differently from another person or otherwise be discriminated against in any interscholastic, intercollegiate, club or intramural athletics offered by the recipient, and no recipient shall provide any such athletics separately on such basis.

This general rule is qualified by subparagraph (b), however, to permit separate teams under certain conditions, *i.e.*,

Notwithstanding the requirements of paragraph (a) of this section, a recipient may operate or sponsor separate teams for members of each sex where selection for such teams is based upon competitive skill or the activity involved is a contact sport. However, where a recipient operates or sponsors a team in a particular sport for members of one sex but operates or sponsors no such team for members of the other sex, and athletic opportunities for members of that sex have previously been limited, members of the excluded sex must be allowed to try-out for the team offered unless the sport is a contact sport. For purposes of this part, contact sports include boxing, wrestling, rugby, ice hockey, football, basketball and other sports the purpose or major activity of which involves bodily contact.

As noted, the defendant here relies upon the provisions of § 106.41(b) to support its policy of prohibiting boys from playing on the designated girls' teams. In their motion for summary judgment plaintiffs contend that the school district's policy with respect to the field hockey team is a bla-

tant and obvious violation of Title IX and the foregoing rule, and that the Court can so determine as a matter of law. In response to the motion, defendant argues that there are issues of material fact in dispute, specifically, in this context, whether field hockey is a contact sport and whether athletic opportunities for boys have previously been limited.[2]

As is obvious from the plain language of the applicable regulation, the defendant cannot lawfully exclude boys from the field hockey team unless we determine that field hockey is a contact sport, and that boys' athletic opportunities have not been previously limited, since a boys' field hockey team is not offered. Pursuant to § 106.-41(b), the school district is required to permit boys to try-out for a girls' team if there is no boys' team for the particular sport, which is here admitted, if the sport is not a contact sport *and* if athletic activities for the excluded sex, here the boys, have previously been limited.

Despite defendant's vigorous attempt to create an issue of fact for trial concerning whether field hockey is a contact sport, we conclude that it is not for purposes of the athletic regulations under Title IX. In the first instance, a number of contact sports are enumerated in § 106.41(b), including ice hockey. The omission of field hockey suggests that this sport was not recognized as a contact sport when the rule was drafted.

Second, the rules of play for high school field hockey define as a violation or foul virtually every activity on the field which involves bodily contact between field hockey players or between a player's body and the ball, as well as practices which could lead to bodily contact or which threatens such contact, *e.g.*, raising the stick during play and hitting the ball in a manner which might cause it to be propelled through the air. (*See*, Exhibit J to Plaintiffs' Motion for Summary Judgment, Doc. # 13). It

---

**2.** We recognize that defendant has identified other issues of material fact which it contends are disputed and relevant to the issues before the Court. As noted above, the contentions concerning material facts in dispute will be considered in the context of our discussion of the various legal issues. We conclude that these are the facts which are relevant and material to our discussion of Title IX. Insofar as these facts may also have an impact on other legal issues to be discussed, such facts will likewise be considered in those contexts.

defies logic to conclude that bodily contact is a purpose or major activity of field hockey when a team may be penalized not only when its players or a ball hit by one of its players contacts another player, but also when such contact is threatened or likely.

Finally, although it is clear from the affidavits of experienced players and coaches given on behalf of both sides that some bodily contact will inevitably occur in the heat of a field hockey game, none of the affiants asserted that bodily contact is the purpose or a major activity of field hockey.[3] Thus, we conclude that field hockey is not a contact sport as that term is defined in § 106.41(b) of the regulations implementing Title IX.[4]

■ Next, we must determine whether the second Title IX criterion supports the defendant's policy of excluding boys from the field hockey team by considering whether athletic opportunities for males, the sex excluded from the field hockey team, have previously been limited. Defendant assumes, without presenting any evidence in support thereof, that athletic opportunities for boys at Liberty High school have not been limited. The evidence, however belies that unsupported conclusion.

In testimony concerning past limitations of athletic opportunities, the defendant's Director of Athletic Plant Management, Dominic Villani, referred to the situation in the late sixties and early seventies when girls had limited athletic opportunities. Now, however, according to Villani, the defendant is proud of having equalized athletic opportunity by creating an equal number of teams for boys and girls at Liberty High School and by permitting girls to try-out for all of the boys' teams as well as all of the girls' teams. (*See*, Doc. # 8 at 20, 31).

In fact, the record demonstrates that as a consequence of this plan for expanding opportunities for girls in athletics, such opportunities are now limited for boys and have been since 1973 when the new athletic policies were implemented. (*Id.*). In an effort to comply with Title IX, the defendant has established at Liberty High School ten sports teams which are exclusively for girls, ten teams designated as boys' teams but for which the girls may also try-out, and two teams designated as co-ed. (*Id.;* Deposition of Dominic Villani at 58, 59, Exh. C to Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment, Doc. # 24). Thus, since the new policies were implemented, boys

**3.** We recognize, of course, that the Ursinus College field hockey coach, Vonni Gros, took an affidavit in which she states that she considers field hockey a contact sport and that bodily contact regularly occurs in the course of field hockey games.

We note, however, that, for purposes of our inquiry, her opinion with respect to whether field hockey is a contact sport amounts to legal conclusion, which we are not obliged to accept. Moreover, her conclusion is not supported by the plain language of the regulation. It is clear that the description of a contact sport under § 106.41(b) does not include a sport in which bodily contact is incidental to the purpose or to the major activities thereof, as stated in the Gros affidavit. Rather, for purposes of the regulation, the issue is whether bodily contact is involved in the purpose or in a major activity of the sport. Thus, we do not consider the opinions expressed in the Gros affidavit to create a genuine issue of material fact.

**4.** In addition, we note in passing that although the defendant here relies upon the contact sports exception to the general requirement of equal opportunity and non-discrimination in

sports programs to support its policy of keeping a boy from participating as a player on a girls' team, this exception is not applied in the case of girls trying out for the boys' teams, including those identified as contact sports in § 106.41(b). (*See*, Preliminary Injunction Hearing Transcript, Doc. # 8 at 31). Obviously, therefore, the defendant uses a "double standard", based on gender, in applying Title IX to its sports teams. It is doubtful whether such blatantly unequal application of the same regulation to boys and girls is lawful. It appears to the Court that if protecting female students from contact sports is a primary and legitimate concern of the school district, it would invoke the contact sports exception with respect to girls trying out for the football and wrestling teams, as permitted by the regulation, whether or not there has been past limitation of athletic opportunities for girls. Instead, the defendant school district appears to believe that it may legitimately apply the literal terms of § 106.41(b), a regulation designed to eliminate gender discrimination in athletic programs, to support gender-based discrimination in its sports program when, as and if defendant concludes that such discrimination is warranted.

have been permitted to try-out for twelve teams, while girls could try-out for all twenty-two teams offered at Liberty High School. (*Id.*). Moreover, a girl who is good enough could play on a boys' team for which there is no comparable girls' team, such as wrestling, as well as on a boys' team in a sport for which there is also a girls' team, such as basketball. On the other hand, a boy such as the plaintiff in this case, who wishes to play a non-contact sport for which a boys' team is not offered, may not try-out or play for the girls' team.

■ The question arises whether, after at least eighteen years of giving girls more athletic opportunities than offered to the boys, the defendant can reasonably base its athletic policies upon the assumption that boys have not "previously" been denied opportunities in athletics, and, therefore, whether the defendant can maintain an exclusively girls' team for a non-contact sport when no comparable boys' team exists. It appears to the Court that the term "previously" refers to a reasonable time in the past, and does not hearken back to the beginning of interscholastic athletic programs. In addition, it is reasonable to construe the term "previously" to include current limitations on athletic opportunities. Thus, it further appears that where there has been at least eighteen years of limitations on athletic opportunities for boys and that such limitations are presently in force, the Title IX requirement of previous limitation on athletic participation for the excluded sex has been met.

■ We conclude, therefore, that, in this instance, defendant is violating Title IX by excluding boys from the field hockey team since there is no boys' team for that sport, field hockey is a non-contact sport and the

excluded sex, males, have previously been denied athletic opportunities.

## II. § 1983 Claims [5]

### A. Equal Protection

■ There appears to be no dispute between the parties concerning the standard for determining whether defendant's admitted gender discrimination denies male students equal protection of the law. Since there is no dispute that male and female students are treated differently in defendant's athletic program, the burden is on defendant to justify its gender-based classification by demonstrating that the policy it seeks to uphold serves important governmental objectives and that barring boys from the field hockey team is substantially related to achieving such objectives. *Haffer v. Temple University*, 678 F.Supp. 517 (E.D.Pa.1987).

Plaintiffs contend that the school district's policy of keeping John Williams from playing on the Liberty High School field hockey team violates the Equal Protection clause of the Fourteenth Amendment in that its gender-based discrimination is not substantially related to any important government interest.

In the first instance, plaintiffs do not agree that the reasons defendant cites to support gender classifications in athletics are important enough to justify discrimination against boys. Plaintiffs also argue that the school district's policy of barring boys from the field hockey team is not substantially related to achieving the defendant's asserted goals of remedying past discrimination against girls in the defendant's athletic programs and of providing and maintaining equal athletic opportuni-

---

5. Having already decided that the defendant violated a federal statute, Title IX, by barring John Williams from the field hockey team, and because that statute "provides its own comprehensive enforcement scheme" we are not required to address plaintiff's Constitutional claims. *Pfeiffer v. School Board for Marion Center Area*, 917 F.2d 779, 789 (3d Cir.1990), quoting *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). We do so, however, for the sake of completeness.

Moreover, we consider the Fourteenth Amendment Equal Protection analysis particularly useful in guiding our consideration of plaintiffs' pendent claim under the Equal Rights Amendment to the Pennsylvania Constitution, although the latter may require a higher degree of scrutiny of gender classification than the Equal Protection clause. *Haffer v. Temple University*, 678 F.Supp. 517 (E.D.Pa.1987).

ties for female students, even if such interests are sufficiently important to justify some disparate treatment of male students with respect to athletic programs.

We note that defendant has identified several factual issues which it contends are both disputed and material to the determination whether the interests it asserts are important enough to justify its policy of prohibiting boys from the field hockey team, as well as whether such policy is substantially related to furthering those interests. The purported factual disputes include the extent of the physiological differences between boys and girls at the high school level, the degree to which permitting boys on the field hockey team would reduce opportunities for girls to play, the extent to which girls experienced past discrimination and the extent to which alternatives to banning boys from the field hockey team would be practical, workable and effective to remedy the asserted past discrimination and to assure continued equality of opportunity in athletics. As will become clear in our discussion of the defendant's justification of its policy, however, these issues are not really in dispute, and/or are not actually material in that there is insufficient justification for the defendant's gender discrimination regardless of whether such issues might be resolved in favor of the defendant at a later trial.

■ We consider first defendant's contention that its present policy is justified as a remedy for past discrimination against girls in its athletic program. Based upon our prior analysis of the relative athletic opportunities currently offered by defendant to boys and girls in connection with plaintiff's Title IX claim, we reject defendant's contention that it is currently proper to limit opportunities for boys in its sports programs.

Our earlier comments, concerning the need to select a reasonable time-frame as a reference for determining whether past practices justify present policies, apply with equal force in this context. The defendant supports its admittedly discriminatory policy of prohibiting boys from playing on the field hockey team by the purported need to redress problems which existed in the sixties and seventies. For the current students of Liberty High School the years for which the school district is still trying to make amends is equivalent to prehistoric times, since most, if not all, of them were not then in existence. Thus, we conclude that with respect to Liberty High School, providing a remedy for past discrimination against girls in athletics does not presently constitute a government interest important enough to justify the current and continuing policy of prohibiting male students from trying out and playing for designated girls' teams when no comparable boys' team is offered. We do not, therefore, need to determine whether there is a substantial relationship between this objective and the means chosen to address it.

■ Our conclusion is different, however, with respect to defendant's announced concern with maintaining opportunities for girls to participate in athletics. Defendant argues, and we accept as a truism which hardly needs extensive evidentiary support, that boys, on average, have a size and weight advantage over girls at the high school level, and that such advantage increases between ages fourteen and eighteen, the usual span encompassed by the high school years. Moreover, we recognize that a rule of law which permits absolutely no distinctions in high school sports programs in order to accommodate such differences might ultimately restrict athletic opportunities for girls and, therefore, create a new imbalance in sports programs in favor of male students.

Nevertheless, the fact that awareness of and accommodation to biological differences between males and females in high school athletic programs may, in appropriate circumstances, be substantially related to the important government interest of maintaining equality of athletic opportunity does not here establish that the defendant's policy of absolutely prohibiting any boy from participating on any team designated as a girls' team is substantially related to furthering the identified interest. As noted in *Haffer*, 678 F.Supp. at 524, "Although

differential treatment, with respect to a particular sport, is permitted when the record reveals relevant physical differences, overbroad and unsupported generalizations regarding the athletic abilities of males and females will be rejected." (Citations omitted).

■ This is so because reliance upon such overbroad generalizations often leads to the type of overbroad policy, such as that at issue here, which represents a government entity's attempt to develop a formula to be applied by rote as a substitute for thoughtful consideration of specific situations and evaluation and adjustment of actions and practices as necessary to assure equal opportunity. Regardless of the value of that goal, policies based upon stereotypes are not the appropriate means for reaching it, and, moreover, provide no assurance that the desired objective will thereby be achieved.

With respect to the defendant's reliance upon undeniable physical differences between boys and girls as a rationale for prohibiting all boys from participating on all designated girls' teams, it is clear from the evidence produced by the defendant in opposition to summary judgment that unsupported assumptions and broad generalizations underlie that policy. The substance of defendant's argument is that the average boy is bigger, stronger, faster and has a longer reach than the average girl. Permitting any boy, therefore, to try-out and play for the field hockey team will have the effect of flooding the team with boys, who will then certainly dominate it to the exclusion of girls who wish to play field hockey.

The small amount of evidence in this record which is based upon past and current facts rather than upon assumptions and speculation concerning future developments does not, however, support defendant's contention. The defendant's experience, based upon the history of the number of girls trying out for boys' teams compared to the number of boys who have sought to try-out for the girls' field hockey team, indicates that the interest among boys and girls in playing on a team designed for the opposite sex is both small and approximately equal. According to the testimony of Dominic Villani, two girls have gone out for boys' teams since such cross try-outs have been permitted at Liberty High School. (See, Doc. # 8 at 24; Exh C to Doc. # 24 at 16). As noted, another boy tried out for the field hockey team in 1990 along with John Williams, (See, Testimony of John Williams, Doc. # 8 at 5), and Villani testified that he thought two boys had previously tried out for a girls' team, although it is somewhat unclear whether that number referred specifically to the field hockey team and whether the other boy who tried out for the team in 1990 was included. Although Villani expressed his personal opinion that if boys are permitted to play on the field hockey team the number of boys desiring to do so would increase over the years, he gave no basis for such opinion and it is obvious that it is not based upon his experiences in the Bethlehem School District or upon his knowledge of the level of interest in field hockey among boys.

The only other evidence concerning the general interest of boys in playing field hockey in the Bethlehem School District suggests that Villani's speculation is nothing more than a baseless attempt to justify a discriminatory policy. Villani himself testified that there is insufficient interest among boys to justify an attempt to organize a boys' field hockey team in the district. (Doc. # 8 at 20, 21; Exh. C to Doc. # 24 at 16, 17). Moreover, it is obvious that this lack of interest among boys does not arise from lack of opportunity for boys to familiarize themselves with the sport, since the school district offers a coed field hockey program at the junior high level. (Doc. # 8 at 4). Finally, Villani testified that even if the Bethlehem School District offered a boys' field hockey team, there would be no other teams against which to compete. Thus, it appears that lack of interest in field hockey among boys is common. This inference is supported by the affidavit of Lynn Ralston, Director of Development of the Field Hockey Association of America, who stated that because field hockey has traditionally been perceived as

a women's sport, the biggest obstacle in promoting the sport generally lies in convincing boys that they can play. (Exh. B to Plaintiffs' Motion for Summary Judgment, Doc. # 13).

It appears from all of the foregoing facts and reasonable inferences to be drawn therefrom that there is a demonstrated lack of interest in playing on girls' teams in general among males at Liberty High School, as well as a general lack of interest among males in playing field hockey at all.

Moreover, defendant's assertion that permitting boys to play on the girls' field hockey team would certainly deprive at least one girl of the opportunity to play is likewise unsupported by the evidence. First, according to the uncontradicted testimony of the Liberty High School field hockey coach, Martin Romeril, girls' interest in field hockey fluctuates. (Exh. D to Doc. # 13 at 25). In one season, there were only eleven girls on the junior varsity squad, barely enough to field a team. (*Id.*). Thus, in any given year, it is possible that the presence of one or more boys on the field hockey team could enhance girls' opportunities to play by assuring that there are sufficient players on the team.

Second, the coach testified that it was his policy to permit all potential players who try-out for the team to join, and to play in the games, at least on the junior varsity level. (*Id.*, at 41). As a general proposition, therefore, defendant's assertion that having even one boy on the field hockey team would absolutely diminish opportunities for girls to play is based upon speculation and assumptions of a worst case scenario rather than upon experience or reasonable expectations.

We conclude that the evidence of record establishes that defendant's fears concerning the purported potential of boys to dominate the field hockey team to the detriment of girls' athletic opportunities are completely unfounded or so ephemeral as to be insufficient justification for a policy which discriminates against boys in order to protect equal athletic opportunities for girls. With respect to this issue, defendant has relied entirely upon opinions which have no identifiable underlying factual support as its basis for asserting that disputed issues of material fact preclude summary judgment, or upon undisputed facts which are immaterial to the asserted interest. It is completely unnecessary, *e.g.*, to determine the extent of the physiological differences between boys and girls at the high school level. Although, on average, such differences may be substantial, that fact is not material to the defendant's position in light of the lack of evidence supporting defendant's assertions that permitting boys on the field hockey team would lead to dramatic increase in the number of boys who wish to play field hockey and thereby reduce opportunities for girls to play. Likewise, although the question whether the average physiological differences between boys and girls might give boys a competitive advantage over girls in playing field hockey could be considered a disputed issue of fact, it is immaterial for the same reason.

██ We further conclude that it is unnecessary to determine the extent to which alternatives to banning boys from the girls' field hockey team would be feasible as a means to further the defendant's interest in maintaining equal athletic opportunities since there is no evidence to support the proposition that permitting boys to play for the field hockey team would impact that interest.

### B. Due Process

Having already concluded that defendant's policy of banning boys from the field hockey team constitutes a violation of the Equal Protection clause in that defendant cannot demonstrate that such policy is substantially related to an important government interest, we find it unnecessary to address in detail plaintiff's argument with respect to the Due Process clause.

We note, however, that we find somewhat problematic the question whether affording the plaintiff notice and an opportunity to be heard before banning him from the field hockey team would have made any difference to him. He was undeniably cut from the team on the basis of a school

district policy which was in effect at the time, and could not have prevailed at a hearing, after notice that he was in jeopardy of being dismissed from the team, absent a determination that the policy was either unlawful or unnecessary. Realistically, it does not appear that he could have obtained the relief he sought without a judicial determination that the policy upon which his dismissal was based is unlawful. Thus, although defendant's actions may constitute a due process violation, it is questionable whether such a finding would lead to an effective remedy in this case.

### III. Equal Rights Amendment to the Pennsylvania Constitution

■ It appears that in the absence of a definitive pronouncement by the Pennsylvania Supreme Court, the lower courts have had some difficulty in determining the appropriate standard to apply in assessing whether a gender-based policy such as that at issue here violates the Pennsylvania Equal Rights Amendment (ERA). *See, e.g., Haffer v. Temple University*, 678 F.Supp. at 534–536. It further appears, however, that the level of scrutiny to be applied is at least as stringent as that applicable to analysis of claims under the Equal Protection clause. Indeed, that is the standard which defendant asserts ought to be applied to plaintiffs' ERA claim.

We have no difficulty, therefore, in concluding that if defendant's policy violates the Equal Protection clause, it likewise violates the Pennsylvania ERA.

### IV. Summary

Since we have concluded that defendant's policy of banning boys from the field hockey team at Liberty High School on the basis that it is a designated girls' team is unsupportable under Title IX of the Education Amendments of 1972, and, in addition, that it violates both the Equal Protection clause of the United States Constitution and the Pennsylvania Equal Rights Amendment, we will enter judgment in favor of the plaintiffs and order that John Williams be permitted to participate in field hockey at Liberty High School on the same basis as female students.